1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

DONNA J. TANZI and JOHN D. TANZI,

Debtors/Plaintiffs/Appellants,

v.

JEROME SHULKIN and SHULKIN
HUTTON, INC., P.S.,,

Defendants/Cross-Appellants.

District Court No. C05-5825 FDB
Bankruptcy Court No. 05-5012
Adversary Case No. 04-4166

ORDER AFFIRMING DECISION OF
BANKRUPTCY COURT

17

18

19

20

21

22

23

24

This matter is before the Court on appeal from a judgment of the United States Bankruptcy Court.  The Debtors Donna and John Tanzi (Tanzi/Debtors) appeal the Bankruptcy Court's denial of the their request for a jury trial on a malpractice claim against Defendants in the handling of their bankruptcy case and the Court's findings relating to whether Defendant's conduct fell below the standard of care.  Defendants Jerome Shulkin and Shulkin Hutton, Inc., P.S. (Shulkin) cross-appeal the Bankruptcy Court's determinations with regard to attorney fees and costs awarded Shulkin in the representation of Tanzi and an order of disgorgement.  This Court has jurisdiction pursuant to 28 U.S.C. § 158 and, for the reasons set forth, now affirms the decision of the Bankruptcy Court.

25

26

ORDER - 1

**BACKGROUND**

The Debtors Donna and John Tanzi were the primary shareholders and officers in a business known as Transition Technology International (TTI).  The business had officers in California and a manufacturing facility in Washington.  The Debtors had residences in both Washington and California. The Debtors guaranteed a loan of approximately $8,500,000 extended from Comerica Bank-California (Comerica).  TTI defaulted on the loan and after the third forbearance agreement expired, demand was made on the Debtors in March 2002.  Also in March 2002, the Debtors closed the sale of their California residence.  The Washington residence was also listed for sale.  Upon close of the California sale, the Debtors moved to Florida where they purchased a home with the proceeds from the sale.  Prior to the purchase of the Florida residence, an involuntary bankruptcy petition was filed against the Debtors by Comerica in the Western District of Washington. Comerica also filed a state court receiver action against the Tanzis and TTI in Clark County Superior Court.   In April 2002, a foreclosure was conducted in the receivership proceedings disposing of essentially all TTI's tangible assets.  The sale resulted in a deficiency owing Comerica of approximately $2.5 million. Comerica filed an adversary proceeding in the Bankruptcy Court for a determination of the amount and allowance of its claim, determination of nondischargeability, determination of exempt status of Debtor's assets and for an injunction. Comerica also sought a determination that Debtors were not entitled to a Florida homestead exemption.

The Tanzis initially had sought legal advice from their attorney Albert Kennedy concerning the Florida home purchase and how to respond to the receiver and bankruptcy actions.  The Debtors became dissatisfied with Kennedy and terminated his representation. On June 25, 2002, Tanzis, through their Florida counsel, first made contact with Shulkin via phone and Shulkin began representing in the pending bankruptcy.  Shulkin refilled a previously sought motion to transfer venue to Florida.  The motion was denied.  In February 2003, Shulkin appeared as attorney of record in the state court receivership proceedings.  Debtors then moved to convert their bankruptcy

ORDER - 2

proceeding from Chapter 7 to a Chapter 11.  Although opposed by Comerica, in September 2002, the Bankruptcy Court granted the motion   An order consolidating the case for joint administration was entered and the case proceeded under Chapter 11 until it was converted to Chapter 7 in March 2003.

In August 2002 Shulkin offered a settlement on Debtors behalf to Comerica for $500,000. Comerica did not respond.

The Debtors claimed the Florida homestead exemption in their schedules.  Comerica opposed this selection and the Bankruptcy Court agreed.  A memorandum decision was issued by the Bankruptcy Court denying the exemption on the basis that the Debtors had not resided in Florida the requisite 180 days immediately preceding the filing of the bankruptcy petition.  This decision was affirmed on appeal to the Ninth Circuit Bankruptcy Appellate Panel.  In the course of the domicile determination  the Tanzis informed Shulkin they did not recognize Washington as their home.  Two subsequent schedules were filed naming California and Washington, respectively as the Debtors' domicile.  Comerica objected to these exemptions.  The Bankruptcy Court issued an opinion holding that California was the Debtors' domicile for purposes of determining exemptions.

A Court appointed examiner filed a report with the Court in January 2003 concluding that there were no evidence supporting causes of action against the creditor Comerica.  Accordingly, litigation against Comerica would not be a viable source of funding for a Chapter 11 plan.  Comerica subsequently renewed its motion to convert Debtor's bankruptcy proceeding to Chapter 7.  The trustee concurred in the motion.  The motion was granted.  This motion was also appealed and affirmed.

In May, 2003 Comerica's complaint for dischargability was tried before the court.  Vi Reno, a contract attorney hired by Shulkin represented the Debtors in this matter.  In July 2003 the Bankruptcy Court issued a written decision holding that Comerica had failed to establish that its debts were nondischargeable.

ORDER - 3

1  On March 30, 2004, the Debtors faxed Shulkin a letter terminating his representation. New

2  counsel was substituted in the bankruptcy case, but not in the state court action.

3  On April 20, 2004 the state court ordered the receivership closed. In June 2004, the

4  Bankruptcy Court entered an order approving settlement authorizing compromise of the claims

5  between Comerica and the Debtors.

6  Shulkin requested the Bankruptcy Court approve attorney fees and costs incurred in the

7  original Chapter 7, Chapter 11 and reconverted Chapter 7. The Debtors and trustee objected to the

8  requests as being unreasonable and as not benefitting the estate. Subsequently, the Tanzis filed a

9  complaint for professional negligence, including a jury demand against Shulkin. The Tanzis also filed

10 a general objection to Shulkin's application for fees seeking relief against SHULKIN in the

11 bankruptcy proceeding. This contested matter was converted to an adversary proceeding and

12 consolidated with the adversary proceeding alleging professional negligence. Shulkin subsequent

13 motion to strike the jury demand was granted.

14 A consolidated trial was held before the Bankruptcy Court on the fee application and claims

15 for professional negligence. The Bankruptcy Court dismissed all negligence claims brought by the

16 Tanzis. The Court reduced the fees and costs requested by Shulkin in the final fee application and

17 ordered Shulkin to disgorge overpayments. Both parties appeal.

18 **STANDARD OF REVIEW**

19 The United States district courts have jurisdiction to hear appeals from a final judgment and

20 order in a bankruptcy proceeding. See 28 U.S.C. § 158(a)(1). A district court reviews de novo a

21 bankruptcy court's conclusions of law. In re Lazar, 83 F.3d 306, 308 (9th Cir. 1996); In re Frontier

22 Props., Inc., 979 F.2d 1358, 1362 (9th Cir. 1992). Findings of fact are reviewed under the clearly

23 erroneous standard. In re Cellular 101, Inc., 377 F.3d 1092, 1095 (9th Cir. 2004). "A finding is

24 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire

25 evidence is left with the definite and firm conviction that a mistake has been committed." United

26 ORDER - 4

1  States v. U.S. Gypsum Co., 333 U.S. 364, 394 (1948).  The clearly erroneous standard is

2  significantly deferential.  Sec. Farms v. Int'l Br. of Teamsters, 124 F.3d 999, 1014 (9th Cir. 1997).

3  Because of the deferential nature of the clearly erroneous standard, if the bankruptcy court's account

4  of the evidence is plausible in light of the record viewed in its entirety, the district court may not

5  reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed

6  the evidence differently.  Amadeo v. Zant, 486 U.S. 214, 223 (1988).  "Where there are two

7  permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."

8  Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985).

9  **ANALYSIS**

10  **A.  Right to Jury Trial**

11  The debtor contends that they were entitled to a jury trial on the claim that Shulkin breached

12  a duty to provide proper legal services.

13  The right to a jury trial is guaranteed by the Seventh Amendment of the United States

14  Constitution which provides "[i]n Suits at common law, where the value in controversy shall exceed

15  twenty dollars, the right of trial by jury shall be preserved."  In 1989, the Supreme Court held that a

16  party that had not filed a claim against the bankruptcy estate had a right to a jury trial in a fraudulent

17  conveyance action by a trustee, notwithstanding the designation of a fraudulent conveyance action as

18  a core proceeding in 28 U.S.C. § 157(b)(2)(H).  Granfinanciera, S.A. v. Nordberg, 492 U.S. 33,

19  (1989).  The Court reasoned that the Seventh Amendment protects a litigant's right to a jury trial if

20  the cause of action is legal in nature and it involves a matter of "private right." Id. at 54.  The

21  following year, in Langenkamp v. Culp, 498 U.S. 42 (1990), the Court held that creditors who had

22  filed claims against the bankruptcy estate had no Seventh Amendment right to a jury trial because, by

23  filing a claim, the creditors had submitted themselves to the equitable jurisdiction of the bankruptcy

24  court. Id. at 45. Thus, through Granfinanciera and Langenkamp, the Supreme Court clearly

25  established that jury trials are available in some bankruptcy matters and a creditor forfeits the right to

26  ORDER - 5

1    a jury trial by filing a proof of claim.

2         The same rules apply to debtors who voluntarily file for bankruptcy protection and

3    subsequently file an adversary proceeding against a creditor.  Numerous courts have considered this

4    issue and held that a debtor who is a plaintiff in an adversary proceeding has submitted his claims to

5    the equitable jurisdiction of the court and has no entitlement to a jury trial.  See In re W.S.C., Inc.,

6    286 B.R. 321 (Bankr. M.D. Tenn. 2002) (no right to jury trial when debtor's causes of action are

7    integrally related to creditor's proof of claim and cannot be decided without also resolving the

8    allowance or disallowance of creditor's claim); In re Hutchins, 211 B.R. 322 (Bankr. E.D. Ark.1997)

9    (debtor was not entitled to a jury trial on pre-petition claims); In re Romar International Georgia,

10   Inc., 198 B.R. 407 (Bankr. M.D. Ga. 1996) (debtor did not have a right to a jury trial in a lender

11   liability action which invoked the bankruptcy court's equitable powers to allow, disallow, or offset

12   mutual debts even though the claim was legal in nature); In re Lyons, 200 B.R. 459 (Bankr. S.D. Ga.

13   1994) (the debtor has waived his right to a jury trial by filing his bankruptcy petition); In re Auto

14   Imports, Inc., 162 B.R. 70 (Bankr. D. N.H. 1993) (the debtors, by voluntarily seeking the protection

15   of the bankruptcy court, with the attendant triggering of the claims allowance process, have

16   implicitly waived any right to a jury trial that may have existed outside the bankruptcy); In re Haile

17   Co., 132 B.R. 979 (Bankr. S.D. Ga. 1991) (the waiver principle of Granfinanciera logically extends

18   to a debtor who voluntarily petitions the court for bankruptcy protection and files an adversary

19   proceeding seeking affirmative relief).

20        A number of cases have addressed the right to jury trial of claims sounding in legal

21   malpractice brought by debtors against their bankruptcy attorneys.  In re Frost, 145 B.R. 878

22   (Bankr. W.D. Mich. 1992) is close factually to the case at bar.  In Frost, the debtor's pre-petition

23   attorney filed a proof of claim in the debtor's bankruptcy estate for unpaid legal fees incurred in the

24   course of state court litigation.  The debtor objected to the claim and asserted counterclaims for

25   negligence and breach of contract, seeking compensatory damages. Frost, at 879.   The debtor

26   ORDER - 6

1    demanded a jury trial, and the bankruptcy court denied the request because the same conduct formed

2    the basis for the proof of claim and the counterclaims, and both required "examination of the overall

3    debtor-creditor relationship." Id. at 882.  Although the counterclaims were legal in nature, the court

4    viewed the issue as "whether determination of the debtor's adversary proceeding is an integral part of

5    the claims allowance process which as stated by the Supreme Court is triable only in equity." Id.

6    Thus, the debtor's counterclaims seeking damages for negligence and breach of contract were

7    intertwined with the debtor's objection to the defendant's proof of claim and "an inextricable part of

8    the claims allowance process." Id.

9           In Billing v. Ravin, Greenberg & Zackin, P.A., 22 F.3d 1242 (3rd Cir. 1994), the Third Circuit

10   denied the debtors' request for a jury trial on a legal malpractice action commenced by the debtors.

11   The malpractice action was commenced by the debtors following a fee application by their former

12   law firm.  The debtors also objected to the fee application on the ground of legal malpractice.

13   Denying debtors' request for a jury trial, the Third Circuit found that the debtors' malpractice action

14   mirrored the objection to the allowance of attorney's fees such that the "close connection between

15   the malpractice action and the objections to fees leads us to conclude that the debtors' allegations of

16   malpractice are part of the process of allowance and disallowance of claims." Id. at 1252.  As part of

17   its ruling, the Third Circuit noted that "[a]n attorney's claim for pre-petition fees and the debtor's

18   objections and counterclaims based on negligence and breach of contract '[c]learly ⋯ arise [ ] out of

19   the claims allowance process'." Id. at 1253.  See also, In re McClelland, 332 B.R. 90 (Bankr. S.D.

20   N.Y. 2005); In re Simmons, 205 B.R. 834 (Bankr. W.D. Tex. 1997); Germain v. Connecticut Nat'l

21   Bank, 988 F.2d 1323 (2nd Cir. 1993).

22          The Bankruptcy Court properly struck the Debtors' jury demand.  The legal malpractice

23   claim implicated the claims allowance process and the Debtors submitted the claim to the Bankruptcy

24   Court's equitable claims allowance process.

25

26   ORDER - 7

1     **B.  Professional Negligence**

2          A plaintiff claiming legal malpractice must prove the following elements by a preponderance

3     of the evidence: (1) the existence of an attorney-client relationship which gives rise to a duty of care

4     on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of

5     care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty

6     and the damage incurred.  Soratsavong v. Haskell, 133 Wn.App. 77, 83, 134 P.3d 1172 (2006);

7     Hizey v. Carpenter, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992).  To prove causation in a legal

8     malpractice action the plaintiff needs to show that "the outcome of the underlying litigation would

9     have been more favorable, but for the attorney's negligence." Aubin v. Barton, 123 Wn.App. 592,

10    608, 98 P.3d 126 (2004).  Proximate causation in legal malpractice cases is generally a question for

11    the trier of fact.  Lavigne v. Chase, Haskell, Hayes & Kalamon, P.S., 112 Wn.App. 677, 683, 50 P.3d

12    306 (2002).

13                    **1.  Choice of Domicile**

14         The Debtors' contend that was negligent for their counsel to select California as the Tanzis'

15    domicile as Washington law provided more favorable treatment than California.

16         The determination of a party's domicile is a mixed question of law and fact.  Lew v. Moss,

17    797 F.2d 747, 750 (9th Cir. 1986).  Under this standard, a mixed question of law and fact is reviewed

18    under the "clearly erroneous" standard where the application of the rule of law to facts requires an

19    inquiry that is essentially factual.   United States v. McConney, 728 F.2d 1195, 1202 (9th Cir. 1984).

20         Although the Bankruptcy Court found Shulkin's conduct fell below the standard of care in his

21    assessment of and inadequately advising his clients of California law, the advice to select California as

22    the Debtor's domicile was not a breach of the duty of care.  This is because California was the only

23    legally correct domicile pursuant to the Bankruptcy Code.  The Bankruptcy Court held a hearing to

24    specifically determine the Debtors' domicile for state exemption purposes.  After a full hearing, the

25    Bankruptcy Court made a factual determination that California was the Tanzis' domicile.  Further, the

26     ORDER - 8

1  Debtors' had previously informed Shulkin that they did not recognize Washington as their home.

2  The selection of California as the domicile was not clearly erroneous or a breach of the duty of care.

3  Additionally, even were the Debtors able to establish a breach of the duty of care, they are

4  unable to establish proximate cause.  The Debtor's attempted to establish proximate cause through

5  the testimony of the trustee and counsel for the creditor, Comerica.  They testified that they would

6  not have objected to the selection of Washington as the Debtors' domicile.  The Bankruptcy Court,

7  however, gave this testimony little weight, as their statements were inconsistent with prior testimony.

8  The determination of the weight to be given expert testimony or evidence is a matter within the

9  discretion of the trier of fact-which in a bench trial like the instant is the bankruptcy court.  In re Jore

10  Corp., 298 B.R. 703 731 (Bankr. D. Mont. 2003); Fox v. Dannenberg, 906 F.2d 1253, 1256 (8th Cir.

11  1990).  The Court may choose how much weight to give testimony and this Court on review will not

12  second guess the trial court, unless its determination is clearly erroneous.  The Bankruptcy Court did

13  not find persuasive the expert declarations and testimony that the conduct of Shulkin fell below the

14  standard of care in not selecting Washington as the Debtors domicile.  This Court will not disturb this

15  finding.

16  **2. Failure to Settle**

17  The Debtors assert their counsel breached a duty to settle.

18  The Bankruptcy Court found that Shulkin made efforts to settle, albeit unsuccessful. There is

19  substantial evidence to support this finding and the Court will not substitute a different finding.

20  Further, the Plaintiffs are unable to establish proximate cause.  Shulkin made a settlement offer and no

21  evidence suggests the Debtors were willing to increase their offer or that the creditor, Comerica was

22  willing to engage in negotiations during Shulkin's representation.  This Court will affirm the

23  Bankruptcy Court's dismissal of the professional negligence claims.

24

25  **C. Attorney Fee and Costs Award**

26  ORDER - 9

1    Shulkin seeks an adjustment to the Bankruptcy Court's reduction and or denial of certain
2    requested attorney fees and costs.

3         **1. Contract Attorneys**

4         By way of oral and written decision the Bankruptcy Court disallowed fees sought to
5    compensate legal work performed by attorneys that were not associates, partners or employed by
6    Shulkin and surcharges on the work.  The Court disallowed these fees for failure of Shulkin to advise
7    the Debtors of the hiring, billing rates, or methods of payment of contract attorneys, or to have the
8    contract attorneys employment approved by the Court.

9         Section 504(a) of the Bankruptcy Code prohibits fee sharing in bankruptcy cases 11 U.S.C. §
10   504(a).  Section 504(b) provides an exception for fees shared among members, partners, and
11   associates in a law firm.  Thus, sharing of compensation by attorneys is prohibited by this section
12   except where sharing occurs between member, partner, or regular associate in professional
13   association, corporation, or partnership or where attorneys represent petitioning creditors in
14   involuntary case, regardless of whether attorneys actually contribute services or expenses to
15   bankruptcy.   In re Matis, 73 B.R. 228 (Bankr. N.D. N.Y. 1987).  See, e.g., Caseate v. U.S. Trustee,
16   222 B.R. 193, 198 (D. P.R. 1998) (holding that associates who were independent contractors and not
17   members of trustee's law firm could not be compensated without having filed a separate retention
18   application); U.S. Trustee v. Grenoble Apartments, II., 152 B.R. 608, 611 (D. S.D. 1993) (holding
19   that attorney for Chapter 11 debtor could not receive compensation for work performed by his son
20   who was not a member of his law firm, though nunc pro tunc retention of son by debtor would allow
21   him to be paid); In re Tarasiak, 280 B.R. 791, 793 (Bankr. D. Mass. 2002) (holding that section 504
22   prevented debtor's attorney in Chapter 11 case from receiving fees for paralegal who prepared
23   debtor's schedules because paralegal was not an employee but an independent contractor who
24   required separate retention approval); In re Kewriga, 2002 WL 484942 (Bankr. D. Mass. 2002)
25   (holding that section 504 mandated denial of fees for conducting legal research done by attorney who

26   ORDER - 10

1   was not a member, partner or regular associate of debtor's counsel).

2       Section 330 of the Bankruptcy Code permits an attorney or other professional person to

3   receive reasonable compensation for services rendered to the bankrupt estate pursuant to 11 U.S.C. §

4   327.  Both section 327 and Bankruptcy Rule 2014 generally require approval of the bankruptcy court

5   before an attorney can enter the employ of the estate.  In the absence of a bankruptcy court order

6   approving retention, contract attorneys cannot be paid for services to the estate. 11 U.S.C. § 327.

7       The bankruptcy appellate panel in In re Kroeger Properties & Development, Inc., 57 B.R. 821

8   (Bankr. 9th Cir.1986) concluded that under the Bankruptcy Code, a bankruptcy court had the power

9   to issue a nunc pro tunc order of appointment for an attorney.  To justify a request for appointment

10  nunc pro tunc, counsel must "show both a satisfactory explanation for the failure to receive prior

11  judicial approval and that he or she has benefitted the bankrupt estate in some significant way."

12  Okamoto v. THC Financial Corp., 837 F.2d 389, 392 (9th Cir.1988).A nunc pro tunc order

13  authorizing payment is justified "only in exceptional circumstances where the attorney provides a

14  satisfactory explanation for failure to obtain approval in advance." In re Occidental Financial Group,

15  Inc., 40 F.3d 1059, 1062 (9th Cir.1994).  Shulkin failed to provide a satisfactory explanation for the

16  failure to obtain court approval.

17      This Court finds the Bankruptcy Court did not err in determining Shulkin was not entitled to

18  an award of fees for the unauthorized work performed by the contract attorneys.

19                  **2. Denial or Reduction of Fees and Costs**

20      Shulkin asserts that the Bankruptcy Court made inappropriate reductions in attorney fees and

21  costs.

22      The award of professional fees in bankruptcy cases is governed by 11 U.S.C. § 330.  That

23  provision covers both the court's ability to declare a fee unreasonable and to determine reasonable

24  fees.  Under 11 U.S.C. § 330(a)(1), bankruptcy courts have wide discretion in awarding

25  compensation to attorneys, trustees, and professionals so long as it is reasonable.  The statute further

26  ORDER - 11

provides, that "[i]n determining the amount of reasonable compensation to be awarded, the court

shall consider the nature, the extent, and the value of such services ..." 11 U.S.C. § 330(a)(3).  In

order to do this, the court must take into account all relevant factors, including (A) the time spent on

such services; (B) the rates charged for such services; (C) whether the services were necessary to the

administration of, or beneficial at the time at which the service was rendered toward the completion

of, a case under this title; (D) whether the services were performed within a reasonable amount of

time commensurate with the complexity, importance, and nature of the problem, issue, or task

addressed; and (E) whether the compensation is reasonable based on the customary compensation

charged by comparably skilled practitioners in cases other than cases under this title.  11 U.S.C. §

330(a)(3)(A)-(E).  If a court determines that a proposed fee is unreasonable, it may "award

compensation that is less than the amount of compensation that is requested."  11 U.S.C. § 330(a)(2).

The Bankruptcy Code permits bankruptcy courts to award attorneys "reasonable

compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1)(A). The Code prohibits

a court from awarding fees, however, for unnecessary duplication of services; or  services that were

not reasonably likely to benefit the debtor's estate or necessary to the administration of the case .  Id.

§ 330(a)(4)(A).  The bankruptcy statute permits a court to return any fees paid to an attorney "if such

compensation exceeds the reasonable value of any such services."  11 U.S.C. § 329.  "An attorney in

a bankruptcy proceeding has an affirmative duty to disclose fully and completely all fee arrangements

and payments."  In re Kisseberth, 273 F.3d 714, 720 (6th Cir. 2001).

The Court will affirm an award of attorney's fees in a bankruptcy case unless an abuse of

discretion or an erroneous application of the law is shown.  In re Jastrem, 253 F.3d 438, 442 (9th Cir.

2001).  A bankruptcy court's finding whether services provided by counsel were necessary is a factual

one that is reviewed for clear error, a "very high standard, and one [an appellate court] would rarely

be likely to find, especially in a fees situation."  In re Hillsborough Holdings Corp., 127 F.3d 1398,

1401 (11th  Cir. 1997).  The court therefore will not reverse an award of attorney's fees unless it is left

ORDER - 12

1    with a definite and firm conviction that the bankruptcy court committed clear error in the conclusion

2    it reached after weighing all of the relevant facts.  In re Auto Parts Club, Inc., 211 B.R. 29, 32 (BPA

3    9th Cir. 1997).

4         The Bankruptcy Court's order on the fee application was made after countless hours of

5    review of the final fee application and taking into consideration the trial pleadings, exhibits, and

6    testimony at trial.  In its rulings, the Bankruptcy Court explained in detail its findings and the

7    necessity for reduction in the requested fees.  A review of these findings discloses that (1) the fees

8    and costs related to the work performed by the contract attorneys during the Chapter 11 were

9    disallowed and the fees charged by contract attorneys Malpass and Agnus during the reconverted

10   Chapter 7 were disallowed as excessive and not assisting the estate; (2) the surcharge for work

11   performed by contract attorney Reno was disallowed as unauthorized by agreement; (3) the fee

12   relating to motion to change venue were reduced as excessive, (4) the fee relating to appeal of the

13   denial of the Florida exemption was found excessive and reduced; (5) the time charged for the

14   discharge litigation was found excessive and the fee reduced accordingly; (6) the fee relating to the

15   appeal of the adversary proceeding was denied as contrary to terms of agreement between the parties;

16   (7) fees for investigating causes of action against the creditor Comerica were reduced as excessive

17   and unreasonable; (8) fees charged relating to claims against Shulkin were disallowed as not

18   benefitting the Tanzis or the estate; (9) fees for preparation of the fee applications were disallowed as

19   the applications were contradictory, inaccurate and not in compliance with local rules; and (10) the

20   award of costs (although unattributed to specific tasks) were reduced in relation to the expenses

21   corresponding to the reduced and/or unauthorized attorney time.

22        The Court finds that the district court's justification for fee reduction was sufficient and that it

23   did not amount to an abuse of discretion.  The court properly considered "the nature, the extent, and

24   the value" of Shulkin's services, taking into account the factors it deemed relevant. The bankruptcy

25

26   ORDER - 13

1    court did not abuse its discretion or misapply the law when it reduced the total fee award payable to Shulk

2        **D.  Personal Liability for Disgorgement.**

3        Shulkin asserts that the Bankruptcy Court lacked legal authority to order Jerome Shulkin

4    personally liable for disgorgement of attorney fees.

5        The professional services corporation statute, RCW 18.100.070 provides that each of the

6    licensed professionals remains personally liable for his or her professional services: "Any director,

7    officer, shareholder, agent or employee of a corporation organized under this chapter shall remain

8    personally and fully liable and accountable for any negligent or wrongful acts or misconduct

9    committed by him or by any person under his direct supervision and control, while rendering

10   professional services on behalf of the corporation to the person for whom such professional services

11   were being rendered."  No change in the existing professional relationship and liabilities between the

12   professional and his client was intended by the statute permitting the organization of a professional

13   services corporation. RCW 18.100.070; <u>Duffy v. King Chiropractic Clinic</u>, 17 Wn.App. 693, 565

14   P.2d 435 (1977).  Accordingly, as the Bankruptcy Court found, Shulkin is not shielded form liability

15   for disgorgement by incorporation into a professional services corporation.  The liability stems

16   directly from the professional relationship that existed between the Tanzis and Shulkin, individually

17   and the professional services he personally performed or failed to perform on their behalf.

18       This Court will affirm the Bankruptcy Court's holding in this regard.

19                          **CONCLUSION**

20       For the reasons set forth, the decision of the Bankruptcy Court is hereby **AFFIRMED** as to

21   all issues on appeal.

22       DATED this 12th day of October, 2006

23                          FRANKLIN D. BURGESS
                            UNITED STATES DISTRICT JUDGE
24

25

26   ORDER - 14